740

**PACE MFG. CO. v. MILLIKEN et al.**

No. 253.

District Court, W. D. Kentucky.

Feb. 8, 1947.

West, Leaton & West, of Chicago, Ill., and Finn & Orendorf, of Bowling Green, Ky., for plaintiff.

William H. Natcher and R. D. Willock, both of Bowling Green, Ky., for defendants.

SWINFORD, District Judge.

The plaintiff, an Illinois Corporation, shipped 25 slot machines C.O.D. to its consignee in Bowling Green, Warren County, Kentucky. The consignee refused to accept the delivery of the goods when they arrived in Bowling Green. The Railway Express Agency, by which the goods had been shipped, notified the plaintiff that the goods were declined by the consignee and it was holding them in Bowling Green subject to plaintiff's orders.

The defendants are the County Judge and Sheriff of Warren County. By certain proceedings had in the Warren Quarterly Court the defendants seized and are seeking to hold and eventually destroy the machines. At the time of the seizure the goods were in the original unbroken packages in possession of the Railway Express Agency.

The defendants are acting under Kentucky Revised Statutes, Section 436.280, authorizing the condemnation and forfei-

ture of any machines such as those in question.

The plaintiff seeks to permanently enjoin such proceeding in the state court and thus have restored its possession of the goods.

The prayer of the complaint should be sustained. The goods were moving in interstate commerce as that term has been defined. The transportation is not completed until the shipment arrives at the point of destination and is delivered. Danciger v. Cooley, 248 U.S. 319, 39 S.Ct. 119, 63 L.Ed. 266; Louisville & Nashville R. Co. v. Cook Brewing Co., 223 U.S. 70, 32 S.Ct. 189, 56 L.Ed. 355; Cunard S. S. Co., etc. v. Mellon, Secretary of the Treasury, etc., D.C., 284 F. 890; Brosious v. Pepsi-Cola Co., et al., 3 Cir., 155 F.2d 99.

The rule is fully expressed in 11 American Jurisprudence, page 50, § 55. I quote: "The power in interstate commerce shipments to make C.O.D. agreements—that is, agreements on delivery of of the commodity shipped to collect and remit the price—is incidental to the right to make such shipments, and the commodities when so shipped do not come under the authority of the state to which they are shipped until arrival and delivery. Any attempt on the part of the state directly to burden or prohibit such contracts or prevent the fulfilment thereof is repugnant to the commerce clause. Thus, property shipped C.O.D. from one state to another cannot be subjected to seizure under the laws of the latter state while in the hands of an express company."

The right of the state to exercise its police power has been consistently respected and as pointed out by the court in Ziffrin v. Martin, D.C., 24 F.Supp. 924, on page 928, the states have that right even though it may incidentally interfere with interstate commerce so long as that interference is not material to the full exercise of rights under the commerce clause of the Federal Constitution. Sherlock, et al. v. Alling, et al., 93 U.S. 99, 23 L.Ed. 819. But when that authority is exerted by the state, even in the just exercise of the police power, it may not interfere with the exclusive authority of Congress to regulate interstate commerce. Sligh v. Kirkwood, etc., 237 U. S. 52, 35 S.Ct. 501, 59 L.Ed. 835.

This rather arbitrary attitude might at first blush seem unreasonable and dogmatic, but unless the commerce between the states were jealously guarded and any infringement held within the narrowest of rules an eventual choas would ensue and industry be hopelessly hampered. In the instant case it is appropriate to paraphrase the language of the court in Adams Express Co. v. Kentucky, 206 U.S. 129, 27 S.Ct. 606, 608, 51 L. Ed. 987. Much as we may sympathize with the efforts to put a stop to trafficking in gambling and gambling devices "we are not at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce."

I think the case of Hickerson et al. v. Commonwealth, 283 Ky. 81, 140 S.W. 2d 841, relied upon by the defendants is in point, but distinguishable from the case at bar. It is not entirely clear that the alleged interstate transaction was accepted as true. The truck involved was not a common carrier but was employed by special contract. It was still within the state and it is evident that slight emphasis, if any, was placed upon its movement in interstate commerce. At any rate it must be conceded without extensive argument that cases involving the construction of the commerce clause of the Federal Constitution must depend upon the decisions of the United States Supreme Court. Monongahela Nav. Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463. Clason v. Indiana, 306 U.S. 439, 59 S.Ct. 609, 611, 83 L. Ed. 858, is readily distinguishable. It involved the constitutionality of the Indiana dead animal disposal act, a penal statute regulating the disposition of large dead animals not slaughtered for human food. The obvious purpose of such a statute was to prevent a nuisance and spread of disease and the requirements for transportation even without the state were not such an interference with interstate commerce as to be of authority here. As said by Mr. Justice McReynolds in the opinion, "It seems plain enough that the challenged statute is a sanitary and health measure not intended to cause discrimination against or

to burden interstate commerce. Its purpose is to promote the health of the people of the State in feasible ways."

The other principal case relied on by the defendants is Ziffrin v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128. The Court is singularly familiar with that case. The writer of this Memorandum sat in the case in the lower court and wrote the opinion from which the appeal was taken to the Supreme Court. See Ziffrin v. Martin, supra. The case is not authority here. It involved only the question of the state's right to require intoxicating liquors to be shipped by common carrier.

Aside from any reason and principle or authority this court feels bound in the determination of this case by the case of Rosenberger v. Pacific Express Co., 241 U. S. 48, 36 S.Ct. 510, 512, 60 L.Ed. 880. I quote the following language from that opinion: "The power in interstate commerce shipments to make C.O.D. agreements, that is, agreements on delivery of the commodity shipped to collect and remit the price, is incidental to the right to make such shipments, and the commodities when so shipped do not come under the authority of the state to which the commodities are shipped under such agreements until arrival and delivery, and therefore any attempt on the part of the state to directly burden or prohibit such contracts, or prevent the fulfillment of the same, necessarily comes within the general rule and is repugnant to the Constitution of the United States."

I am not, however, declaring this state statute unconstitutional. It does not in my judgment pretend to interfere with articles moving in interstate commerce as those involved here and under similiar circumstances. I reach the same conclusion here, in that respect, as that expressed in the following quotation from Rhodes v. Iowa, 170 U.S. 412, on page 426, 18 S.Ct. 664, on page 669, 42 L.Ed. 1088: "We think that, interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment while the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee; and of course this couclusion renders it entirely unnecessary to consider whether, if the act of congress had submitted the right to make interstate commerce shipments to state control, it would be repugnant to the constitution."

A permanent injunction should be granted as prayed and the defendants directed to return the articles to the Railway Express Agency for transmittal to the plaintiff.

Findings of facts, conclusions of law and judgment are this day filed.