Rosen, Appellant, *v.* Superintendent of Police Le Strange et al.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Abraham Blieden,* for appellant.

*Benjamin S. Sternthal,* Assistant City Solicitor, with him *David J. Smyth,* City Solicitor, *John H. Maurer,* Assistant District Attorney and *Charles F. Kelley,* District Attorney, for appellees.

OPINION BY KELLER, P. J., December 11, 1935:

The order appealed from must be reversed.

The petition of appellant, filed in the Court of Quarter Sessions of Philadelphia County on April 17, 1935, averred that on April 7, 1935 a squad of police raided the apartment occupied by him and arrested him and several others for maintaining a gambling house; that he was given a hearing and discharged by the magistrate, on the testimony of the police that they found no gambling going on there; that the police unlawfully took *from appellant's pocket* at the time of said raid the sum of $42.60, which they have refused to return although he had made demand for the same; and prayed the court to order the Superintendent of Police and his chief clerk to return the said sum of $42.60 to him.

On May 2, 1935 the court refused the petition and ordered the money to be paid over by the Department of Public Safety to the City Treasurer.

The same day, appellant took an appeal to this court from said order.

On May 20, 1935, after the writ of certiorari from this court had been filed in the court below, the lower court permitted the Superintendent of Police to file an answer as of date of May 1, 1935, in which he admitted that the sum of $42.60 had been taken from the pocket of the petitioner, but averred that the latter was not entitled to its return, because it was "the instrumentality of the offense of maintaining a gambling estab-

lishment." Said respondent also denied that the police officers had testified before the magistrate that they found no gambling going on at petitioner's premises, and averred that the magistrate had arbitrarily and contrary to the evidence discharged the petitioner.

Passing by the impropriety (Gilbert v. Lebanon Valley St. Ry. Co., 303 Pa. 213, 154 A. 302; Harwood v. Bruhn, 313 Pa. 337, 170 A. 144) of receiving and filing the answer nunc pro tunc after the writ of certiorari from this court had been received and filed—it was an *addition to* not a *correction of,* the record—, we are of opinion that the answer furnished no legal justification for the order appealed from.

Money is not, ordinarily, itself, an instrumentality of gambling. It may be, as when men gamble on the toss of a coin. But usually it is the stake or profit of gambling, not an instrumentality, device or apparatus for gambling. Cards, dice, roulette wheels, slot machines, punch boards, certain kinds of boards or tables, lottery tickets, policy slips, 'numbers' books and slips are among the common forms of gambling devices and apparatus.

Money may, nevertheless, be subject to seizure, along with *contraband* gambling devices, apparatus or instrumentalities, (Com. v. Sinn, 82 Pa. Superior Ct. 482, 484; Com. v. Kaiser, 80 Pa. Superior Ct. 26, 28) when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. Thus money found in a gambling slot machine, when seized, may be held with the machine and be confiscated by the Commonwealth; for while it had passed

out of the ownership of the players, who inserted it in the machine, it had not been reduced to the possession and ownership of the proprietor; he does not become the owner of the money while it is contained in a receptacle within the illegal and contraband gambling machine. So money found lying on a roulette wheel, or rouge et noir table, when the gambling device is seized, if so commingled that its prior ownership has been lost, may, in like manner, be subject to confiscation, Com. v. Sinn, supra, p. 484. Money received for lottery tickets and 'policy' slips and from playing 'numbers,' and held awaiting the drawing of the lottery, or the determination of the winning number, if earmarked or segregated so as to be identified as part of the gambling operation, may likewise be confiscated as contraband by the authorities along with the gambling instrumentality: Appeal of Joe Curcio, 106 Pa. Superior Ct. 53, 161 A. 627. That case illustrates the distinction above made. The money which had been received from the persons who played the 'numbers' game and was being sorted into packages, at the time the place was raided, was properly seized and retained by the police authorities, but other money found in the place, which had been received from the operation of Curcio's billiard tables, and was not identifiable with the illegal lottery was rightly ordered returned to him.

The money in the case now under consideration was taken by the police from appellant's pocket. It was not found on any gambling table, wheel or other illegal device, machine, or apparatus. It could not be earmarked or identified as a stake which was being gambled for, or be segregated from the appellant's own money obtained from legal sources. If any of it had been received from an illegal source, such as gambling, it had, for the purposes of this case, been so effectually reduced to appellant's exclusive possession prior to the

seizure as to have lost its link or connection with any gambling operation.

The order of the court below is reversed and the record is remitted with directions to enter an order as prayed for. Costs to be paid by appellee, Le Strange.